MARY F. KLOBERG and CLARA J. KLOBERG, Plaintiffs, *v.* MARTHA P. TELLER, Individually and as Executrix of the Will of FLORENCE T. VALORY, and VICTOR VALORY, Defendants.

(Supreme Court, Bronx Special Term, June, 1918.)

Wills — contract by unmarried woman to make — marriage — Decedent Estate Law, § 36.

Section 36 of the Decedent Estate Law, which declares that a will executed by an unmarried woman shall be deemed revoked by her subsequent marriage, is not to be so construed as to make it impossible for a woman to contract away in advance of her marriage the right to provide for her husband by will.

A written contract entered into by four sisters requiring each to execute a will unalterable and irrevocable by codicil or otherwise, providing first for her descendants, and, in the event of her death without leaving descendants her surviving, that all of her property should go in equal shares to the survivors of

41

Supreme Court, June, 1918.          [Vol. 103.

said four sisters after the payment of debts and funeral expenses, and the payment of legacies to each of her brothers, and of one dollar to her husband should she marry, and the agreement further provides that in case she married after making such will she should make another will with identical provisions except for such changes as would be necessitated by her marriage, is not contrary to public policy on the ground that it was designed or tends to restrain marriage.

DEMURRER to defenses.

Goldie & Gumm, for plaintiffs.

° William J. Fallon, for defendant Victor Valory.

MULLAN, J. The defenses demurred to are obviously bad, and defendant's counsel makes no attempt to justify them, but contents himself to assail the complaint. That pleading, by sufficient allegations, sets out a contract in writing among four sisters, requiring each of them to execute a will, unalterable and irrevocable by codicil or otherwise, providing first for her descendants, and then, in the event of her death without leaving descendants her surviving, that all of her property should go in equal shares to the survivors of the said four sisters, after the payment of debts and funeral expenses, and the payment of legacies of one dollar each to her brothers, and of one dollar to her husband, should she marry; the agreement further providing that in case she married after making such will she should make another will with identical provisions except for such changes as would be necessitated by the occurrence of the marriage. Defendant's counsel attributes only one vice to the agreement — and I have looked for and considered no other — which is, that it contravenes public policy in that it was designed or tends to restrain marriage; and he relies upon *dicta* in *Gall* v. *Gall,* 64 Hun, 600,

and *Owens* v. *McNally,* 113 Cal. 444. In both those cases, however, the restraint, if any there were, was upon the potential husband, and not upon the potential wife, and the *dicta* referred to are in accord with and find support in the policy of the law which imposes upon the husband the obligation to support his wife. It is quite true that there is nothing in such agreements as that here in question to prevent the promisor from supporting, during the promisor's life, any spouse that he or she might take; but the difference between the moral obligation that a husband upon marriage incurs in the matter of posthumous support, from that incurred by a wife, while not, perhaps, easily translatable into words, is one that is generally recognized in this country and has laid its impress upon public opinion. Whether a change may not be wrought by the increasing economic independence of woman is a matter for the future's decision; but I think there can be no doubt that in this day and age courts of equity may well refuse to sanction agreements that make it impossible for a man to provide for his wife after his death, while finding no adequate reason for interfering with an agreement of a wife that excludes her husband from any participation in her estate. Public policy is often a vague thing, sometimes rather felt than seen, and is the harder on that account to be at all sure of; but I can neither see nor feel any general sentiment in the community that would justify a nullification of such an agreement as is here dealt with. For a contract to be void as against public policy, it should, I think, be quite clearly repugnant to the public conscience; for as Jessel, Master of the Rolls, put it: " If there is one thing more than another which public policy requires, it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into fairly and volun-

tarily, shall be held sacred, and shall be enforced by courts of justice.'' *Printing & Num. Reg. Co.* v. *Sampson,* L. R. (19 Eq.) 462, 465. In other respects the agreement satisfies all the severe requirements of the cases in respect of consideration, certainty of execution, clearness and reasonableness of intent, and absence of fraud. *Shakespeare* v. *Markham,* 10 Hun, 311, 322; *Parsell* v. *Stryker,* 41 N. Y. 480; *Edson* v. *Parsons,* 155 id. 555; *Middleworth* v. *Ordway,* 191 id. 404; *Godine* v. *Kidd,* 64 Hun, 585; *Gall* v. *Gall, supra.* Defendant's counsel finds support for his contention in the statute which revokes a woman's will upon her marriage (Decedent Est. Law, § 36), but I do not think that that enactment of the common law is to be given the effect of making it impossible for a woman to contract away, in advance of her marriage, the right to provide for her husband in her will. Similar reasoning against all contracts of the kind under scrutiny, based upon the argument that in effect they nullified the Statute of Wills, has been advanced (See *Shakespeare* v. *Markham, supra,* 325; *Gall* v. *Gall, supra,* 602), but the courts of this country and of England have remained uninfluenced by that consideration; and if that important and comprehensive statute may be subverted by these contracts to make wills I see no compelling force in the argument that the statutory revocation of a woman's will by her marriage is to be extended in its effect to restrict her contractual right to make such disposition of her property as will take effect upon her death. The defendant's counsel is undoubtedly right in his statement that that part of the prayer for relief is not well made which seeks a determination that the will made at the time of the execution of the agreement was not revoked by the marriage, as the statute unquestionably revoked the will; the point is unimportant, however, as the

other prayers for relief are correctly made and sufficiently cover the situation. Demurrer sustained with costs, and with usual leave to defendant to plead over.

Demurrer sustained, with costs.