In the Matter of the Estate of JOSEPH SCHWEIZER, Deceased.

Surrogate's Court, New York County, September 4, 1934.

*O'Brien, Boardman, Conboy, Memhard & Early* [*Charles B. Fernald* of counsel], for the executors.

*Michael Schneiderman,* for the contestant, Countess Gulinelli.

*Platt, Taylor & Walker* [*Collier Platt* of counsel], for Emily Schweizer, general guardian of Raymond J. Schweizer and others, three infant children of Raymond J. Schweizer, deceased.

*Samuel Falk*, special guardian of the infants Paolo Cottarelli and others, grandchildren of Countess Gulinelli.

FOLEY, S.   Certain objections have been filed to the account by the daughter of the testator, which involve the enforcibility of an antenuptial agreement made by the testator in 1902 in anticipation of the impending marriage of said daughter.   These objections principally involve the effect of the agreement upon the distribution of the estate.   The terms of the agreement provided for the payment of an annual allowance of $2,500 during the lifetime of the daughter. In addition, the testator expressly agreed that certain testamentary benefits for the daughter, contained in a prior will, stated to have been executed on July 26, 1897, would remain " inviolate and unalterable."   The specific clause of the prior will was set forth in the agreement, although the remaining clauses were not set forth in substance or specific language.   The specific clause contained in the agreement provided that upon the death of the testator's wife, the estate should be divided between his children or the issue of deceased children, by representation.   This agreement was the subject of an action brought against the decedent in his lifetime, involving the recovery of the annual allowance to his daughter.   The judgment therein was for the plaintiff and against the defendant, the testator.   The agreement was determined to be valid and enforcible.   Upon appeal, the judgment was affirmed by the Appellate Division and the Court of Appeals (*DeCicco* v. *Schweizer*, 166 App. Div. 919; affd., 221 N. Y. 431).

The testator left surviving his daughter (the objectant), Blanche Gulinelli, and the children of a deceased son Raymond.   If no other events had occurred, therefore, the daughter, under the 1902 agreement, would have been entitled to one-half of the estate outright.   I am of the opinion that the affirmance by the Court of Appeals of the judgment of the Supreme Court determined the validity of the agreement not only as to the immediate question involved — the payment of income — but also as an enforcible obligation against the estate.

At the time of the making of the agreement in 1902 the first wife of the testator was living.   She died in 1925.   In the same year he remarried.   In 1928 he executed a new will in which he gave the income of the residuary estate to his second wife, with remainder to his children or their issue.   The remainder was contingent and the class of takers was to be determined as of the

death of the widow. The widow now contends that the remarriage of the testator in 1925 partially revoked the prior will of 1897, which was made unalterable by the antenuptial agreement. It is urged that the interest of the daughter Blanche was thereby reduced to one-third of the estate instead of one-half. It is further contended by the widow that, under the equitable powers of the surrogate, it should be held that the agreement violated public policy, or that there should be read into the minds of the contracting parties a reservation as to the effect of a possible remarriage of the testator and the legal rights which would accrue to the second wife by virtue of her marriage. In my opinion, these contentions, under the special circumstances of this case, cannot be sustained. Courts of equity, under certain circumstances, have found a method to recognize the rights of a wife who was married after the making of a valid agreement to bequeath the property of the decedent, or after the execution of an otherwise irrevocable will. (*Gall* v. *Gall*, 64 Hun, 600; *Owens* v. *McNally*, 113 Cal. 444; 45 P. 710; *Kloberg* v. *Teller*, 103 Misc. 641.) The distinguishing feature, however, of the present case is the execution by the testator of the subsequent will of 1928, wherein certain benefits were created by him for his second wife. That will has been admitted to probate and she has recognized its validity by qualifying as an executrix under its terms. The situation, therefore, is no different from the ordinary case where a man marries after the execution of a will. Partial revocation as a protection of the rights of a wife is assured by the law. (Dec. Est. Law, § 35.) The husband, however, is at liberty to make a new will. Prior to the enactment of section 18 of the Decedent Estate Law, with the new right of election to the widow, the husband was at liberty to dispose of his property as he pleased. He might disinherit his second wife or give her all or any part of the estate. The making of a new will after the marriage nullifies the rights of the wife under section 35 of the Decedent Estate Law. The testator must be deemed to have made the will of 1928 with knowledge of the existence and validity of the agreement which he had made with his daughter in 1902. That agreement restricted his power to dispose of his whole estate. The daughter was entitled to certain irrevocable benefits in his estate. There was a probability that at the time of the execution of the 1928 will the interest of the daughter under the agreement would be at least one-half of the estate. It was within the testator's power to have given to his wife outright the remaining half of the property left by him. Thereby she would have received more than her intestate share if no new will had been made. Instead he gave her the life income of the residuary trust.

I hold that in the ascertainment of such residue, one-half of his property must be deducted by reason of the validity of the antenuptial agreement. The daughter became entitled to such half shares. The wife became entitled to the income of the remaining half of the net estate. Under these special circumstances, since the wife has received substantial benefits under the last will, I am of the opinion that there is no occasion to invoke any additional rights in equity in her favor.

Upon the secondary question raised by the general guardian of the children of the deceased son Raymond, who are named as remaindermen of one-half of the residuary trust estate, I hold that they will be entitled, upon the death of the widow, to the entire corpus of the trust which has been made subject to the life estate of the widow. It was plainly contemplated by the testator in the 1897 will, in the 1902 agreement and in the 1928 will that the ultimate division of his estate should be made in equal parts between his two children, if they survived, or the issue of a child who predeceased him. If the daughter Blanche had died before him, her issue would have taken under the agreement. I have held in the foregoing part of this decision that because of her survival she is presently entitled to one-half of the residuary estate outright. To effectuate the intent of the testator and at the same time harmonize it with the terms of his agreement, the remaining half of the estate should be held in trust for the life of the widow and upon her death should be paid over to the then surviving issue of the deceased son Raymond. There is a further possibility which may occur — the death of all such issue before the death of the widow. Intestacy might thereby result. That contingency, however, must await the termination of the trust and the ascertainment of the actual events.

Submit decree on notice settling the account accordingly.