ETHAN S. ALLEN, Plaintiff, v. ARMOUR PHILLIPS PAYSON, as Executor, etc., Defendant.

Supreme Court, Special Term, Queens County, February 8, 1939.

*Earl J. Helmick*, for the plaintiff.

*Street & Adikes* [*John Adikes* of counsel], for the defendant.

FROESSEL, J. This is a motion to strike out, as legally insufficient, seven affirmative defenses contained in defendant's second amended answer. The action is for specific performance of an alleged agreement, made on or about January 25, 1923, between one Robert R. Perkins, plaintiff's uncle, and the latter's wife, defendant's testatrix, by the terms of which she agreed that if " the said Robert R. Perkins would make a last will and testament leaving all of his property to her in the event he predeceased her, that she would make a last will and testament disposing of all of her property upon her death, one-third to her relatives and two-thirds to his relatives, in the manner more specifically set forth in " the complaint, and " that upon the death of either of said parties, that the survivor would not alter or change their last wills and testaments so as to make any other disposition of their property than as heretofore agreed to." The complaint further alleges that

in the latter part of January, 1923, and within a few days of each other, the said Robert R. Perkins and his said wife, Mrs. Perkins, made substantially similar wills in pursuance of this agreement; that he died shortly thereafter, on February 11, 1923, whereupon she received under his said will an amount in excess of $300,000; that thereafter she destroyed her said will and made another on December 12, 1934, not in conformity with the said agreement, as a result of which the plaintiff was bequeathed the sum of $5,000, whereas, had the agreement been observed, he would have received a one-sixth interest in the residuary estate far in excess of $5,000.

The first and second defenses allege the making of another will by Mrs. Perkins on June 15, 1923, and a codicil thereto on July 15, 1924, the revocation of all prior wills, and that if the agreement alleged in the complaint were ever in fact made the said will of June 15, 1923, constituted a breach, the Statute of Limitations commenced to run as of that day, and the action would be barred both under the ten-year and six-year limitations, respectively, inasmuch as the present action was commenced on May 3, 1938. The third and fourth defenses are to the same effect, except that they refer to still another will of Mrs. Perkins, alleged to have been made on July 28, 1926. The fifth and sixth defenses are likewise to the same effect, except that the breach which they allege commenced the running of the statute is the remarriage of Mrs. Perkins on May 19, 1927, followed by a claimed statutory revocation of all prior wills under the provisions of section 35 of the Decedent Estate Law. As to these defenses, however, defendant's counsel are silent in their brief. The eighth defense is a substantial reiteration of the fifth, but is pleaded as a partial defense, irrespective, however, of the Statute of Limitations.

As to the first six defenses, the question to be determined is: When does the Statute of Limitations begin to toll in an action of this character? Defendant contends that the statute began to run when his testatrix made her first non-conforming will on June 15, 1923, or when she made her second non-conforming will on July 28, 1926, or, in any event, when she remarried on May 19, 1927, and since more than ten years have elapsed between either one of these events and the commencement of this action on May 3, 1938, the first six defenses are good. Plaintiff maintains that the statute did not commence to run until the date of Mrs. Perkins' death on December 21, 1937, and accordingly the said defenses are insufficient in law.

Agreements similar to the one relied upon by plaintiff are recognized in this State (*Morgan* v. *Sanborn*, 225 N. Y. 454, 457), and have been enforced in the English courts as long ago as *Goylmer* v. *Paddiston* (2 Ventris, 353, decided in 1681).

In the instant case it is alleged that the agreement was to make mutual wills in a specified manner and not to alter them. Defendant's counsel endeavor to distinguish between the obligation to make the conforming will in the first place and the obligation not to alter the will thereafter. I see no such distinction here, for we have a compact to be kept at death. As alleged in the complaint, Mrs. Perkins' obligation required her " to make a Last Will and Testament *disposing* of all of her property *upon her death* " and in a specific manner. Under this agreement she disabled herself from making any different disposition of the property she received under her husband's will. Lord CAMDEN, as early as 1769, in *Dufour* v. *Perraro* (Hargrave's Juridical Arguments, 304, 309), said in this connection: " There cannot be a more absurd presumption than to suppose two persons, while they are contracting, to give each a license to impose upon the other. Though a will is always revocable, and the last must always be the testator's will; yet a man may so bind his assets by agreement, that his will shall be a trustee for performance of his agreement. * * * These cases are common; and *there is no difference between promising to make a will in such a form and making his will with a promise not to revoke it.* This court does not set aside the will, but makes the devisee heir or executor trustee to perform the contract." (Italics the court's.) And in *Mutual Life Ins. Co.* v. *Holloday* (13 Abb. N. C. 16), referred to and quoted from with approval in *Adams* v. *Swift* (169 App. Div. 802) and in *Hermann* v. *Ludwig* (186 id. 287, 300), the court said: " If the agreement was valid in law and in equity, it would be a mockery of justice to say that having executed the will, she fully satisfied her part of the agreement, and was at liberty to revoke it the next day. The right secured by her husband was substantial, and could not be defeated by another will. * * * *And the obligation not to revoke or change a will, although negative, is as much involved in the agreement as the affirmative duty to devise in a certain way.*" (All italics mine.) In 68 C. J. (§ 192, pp. 578, 579) it is stated: " The mere drawing and execution of such a will is not of itself a performance and discharge of the contractual obligation. The rights of the parties under the contract are not varied by the mere fact of execution or nonexecution of the will."

When, therefore, *upon her death* on December 21, 1937, Mrs. Perkins failed to leave a last will and testament in accordance with the alleged agreement, she *eo instante* breached the said agreement, and plaintiff's right to relief thereupon accrued. Section 11 of the Civil Practice Act specifically provides: " The periods of limitation * * * must be computed from the time of the accruing of the right to relief by action." No present right of action accrued

to plaintiff during the lifetime of Mrs. Perkins. Until her death she might have made or remade a will complying with the terms of the alleged agreement, and, this being an action in equity, plaintiff would have ten years from the date of her death in which to bring suit. (*McCormack* v. *Halstead*, 132 Misc. 916.) Assuredly the plaintiff could not have had specific performance of the alleged agreement before Mrs. Perkins' death, when by its terms performance was only due at death. Nor could he have maintained an action for damages. Aside from other possible objections to such an action, who could tell whether plaintiff, who had merely a life interest coupled with a power, would survive Mrs. Perkins? Moreover, under the terms of her husband's will, Mrs. Perkins was at liberty during her lifetime to use up the entire estate for her own legitimate needs as she saw fit, short of making a different testamentary disposition or a gift to defeat the purpose of the agreement, after having accepted its benefits. Who could tell what, if anything, she would have left? Furthermore, the estate may have been completely destroyed by depreciation of the securities or property of which it consisted. How could the right to any relief by action accrue in such a situation prior to Mrs. Perkins' death? Inasmuch as the time when " the cause of action has accrued," as that term is used in the Civil Practice Act, means the time when the plaintiff first became enabled to maintain this action, namely, on December 21, 1937, and performance of the agreement did not become due by its terms until then, the Statute of Limitations did not commence to run until that event happened. (*Cary* v. *Koerner*, 200 N. Y. 253, 259; *Ga Nun* v. *Palmer*, 202 id. 483, 493; *Quackenbush* v. *Ehle*, 5 Barb. 469; *Taylor* v. *Welsh*, 92 Hun, 272; *Meeker* v. *Oramam Realty Corp.*, 163 Misc. 702, 703; affd., 254 App. Div. 563.)

This view disposes of the first six defenses, excepting in so far as the fifth and sixth defenses relate to the eighth, which I shall now consider. In this connection defendant contends that by virtue of section 35 of the Decedent Estate Law Mrs. Perkins' remarriage on May 19, 1927, operated as a statutory revocation of any prior will, including the conforming will of January, 1923. But it does not revoke a prior contract, and that is the basis of this action.

In 68 C. J. (§ 205, p. 587) it is said: " That while the will is, like other wills, revoked by a subsequent marriage, the contract and the obligations arising therefrom continue valid and enforceable." And in volume 69 of the same work (§ 2721, p. 1300) we read: " That a mutual will is not revoked by the testator's marriage, since his spouse's rights attach only to the property beneficially owned by him, and not to property the legal title to which is in him, but which in equity belongs to another."

In *Ralyea* v. *Venners* (155 Misc. 539) plaintiff's father and the latter's second wife during their marriage executed a joint will and a contemporaneous agreement. After the death of the second wife plaintiff's father remarried and transferred his property to his third wife. After the death of both plaintiff sought to enforce in equity the aforesaid agreement, as one of its beneficiaries, and the court squarely held that said agreement was unaffected by section 35 of the Decedent Estate Law, concerning revocation of a will by marriage. (See, also, *Matter of Schweizer*, 153 Misc. 48; *Kloberg* v. *Teller*, 103 id. 641.) The statute expressly states that " such surviving husband or wife shall be entitled to the same rights in, and to the same share or portion of the estate of said testator as he or she would have been, if such will had not been made." Inasmuch as our courts enforce agreements of the character here considered, even where the promisor makes a variant will or no will at all, and dies intestate, there is no sound reason why the agreement in suit should not be enforced simply because the intestacy is created by the statute; the contract in any event remains unaffected. And whether the plaintiff be a creditor under the contract or a *cestui que trust* under an implied trust, his rights cannot be affected by section 35 of the Decedent Estate Law any more than those of any other creditor or *cestui que trust*.

The foregoing views require the granting of the motion to strike out the first six and the eighth defenses in defendant's second amended answer as insufficient in law.