OPINION OF THE COURT
Douglas F. Young, J.
This action was commenced by plaintiff husband to recover damages for breach of one of the provisions of a stipulation entered into between him and the defendant wife on February 14, 1974. The stipulation was entered into in open court as a settlement in a divorce action instituted by the defendant wife. The provision in question is unusual in that it provides that the defendant wife is to pay the plaintiff husband $125 per week as "alimony, if you will”. Plaintiff seeks judgment in the amount of $11,000 for arrears from September 20, 1974 to June 4, 1976.
A. THE FACTS AND PRIOR LITIGATION
The parties were married on May 14, 1953. During the course of the marriage, plaintiff husband did not work and was apparently content to be supported by the defendant wife, who enjoyed more than moderate financial success in the *578 business world. The defendant wife was also apparently satisfied with this arrangement, and made no reference to any dissatisfaction with this particular aspect of the marriage in her papers submitted during the course of the divorce action. In fact, the plaintiff husband testified that his withdrawal from the world of work, which occurred in 1955, was at the insistence of the defendant wife.
In 1973, the defendant wife instituted an action for divorce against the plaintiff husband, alleging that behavior on his part constituted cruel and inhuman treatment. No request for alimony or counsel fees was made by the defendant wife. Plaintiff husband interposed an answer which contained, inter alia, a counterclaim for divorce, support and maintenance, partition of the marital premises and counsel fees. Plaintiff’s counterclaim was based upon allegations of cruel and inhuman treatment. His claim for support and maintenance was based upon the allegation that his continued unemployment rendered him "unable to work” and left him with no funds with which to support himself, and that "without such sum the [plaintiff] will become a public charge.”
The divorce action reached the top of the calendar in February, 1974 and was sent out for trial. The párties, through their attorneys, spent most of the day attempting to settle the matter. As is the usual practice, the Justice presiding attempted to help the attorneys arrive at a mutually agreeable disposition.
Towards the end of the day a settlement was reached. The plaintiff husband agreed to withdraw his counterclaim and permitted the defendant wife to obtain an uncontested divorce. Several dispositions of property were agreed upon, including defendant’s purchase of certain stock held in plaintiff’s name, and the sale of the marital residence and the division of the proceeds from that sale.
As part of the settlement, defendant wife also agreed to pay the plaintiff husband $125 per week. The entire stipulation was read into the record by the wife’s attorney and included the following language: "It is further stipulated and agreed that the plaintiff [defendant herein] will pay to the defendant [plaintiff herein] as and for his support and maintenance, in the form of alimony, if you will, the sum of $125 per week to be paid by mail at an address to be designated by the defendant [plaintiff herein].”
*579 Both plaintiff and defendant then testified that they understood the stipulation and affirmed that they agreed to it.
On March 7, 1974, a judgment, prepared by defendant wife’s attorney was signed by the Trial Judge and was entered in the County Clerk’s office. That judgment provided, inter alia, that defendant wife would pay plaintiff husband $125 per week "as alimony” and also provided that the stipulation "shall survive and not be merged” in the judgment.
The parties both complied with the terms of the stipulation, including the payment to plaintiff husband. However the marital residence was not sold; instead defendant wife purchased plaintiff’s share. Defendant wife purchased plaintiff’s stock in the Rockville Links Corp. for $3,000.
However, on or about September 20, 1974, defendant wife ceased making the weekly payments of $125. She testified that she had been advised (by a friend who is the wife of a lawyer) that it was illegal for a wife to pay alimony to her husband and thereupon ceased making payments to the plaintiff husband. Defendant wife testified to the effect that she became aware of the alleged illegality of the payments because of the decision in Steinberg v Steinberg (46 AD2d 684). It should be noted that the decision in Steinberg was rendered on October 21, 1974, more than one month after defendant wife stopped making payments to plaintiff husband.
Subsequently, defendant wife moved to resettle the judgment of divorce by eliminating the provision for the payment of alimony to plaintiff. The trial court denied the motion, stating: "The parties hereto were represented at all stages of the proceedings by counsel of their choice. The stipulation entered into between the parties was a voluntary one and, so far as the Court knows, there was no coercion on either side. Whether the weekly sums paid by the plaintiff wife to the defendant husband are characterized as support or alimony is simply a matter of semantics. By either name, the stipulation entered into between the parties would be valid and binding as a contractual obligation between them. The plaintiff is paying a weekly sum to her former husband pursuant to an agreement, not pursuant to any order of this Court.” (Emphasis supplied.)
The Appellate Division, Second Department, reversed, stating: "Special Term was without authority to order a wife to pay a husband alimony. The motion should have been granted to the extent of vacating that part of the judgment of divorce *580 which provided for alimony payments to [the husband].” (Cheatham v Cheatham, 53 AD2d 600.)
However, the court made no determination respecting the validity of the stipulation which is the basis of this action, adding: "We do not pass on the validity and enforceability of the stipulation as a contract.”
B. THE PLEADINGS
Plaintiff husband’s complaint sounds in contract only. Defendant wife’s answer admits all of the material allegations of the complaint except plaintiff’s performance of the terms of the stipulation. She interposes two affirmative defenses and counterclaims which speak to the enforceability of the stipulation.
In her first affirmative defense and counterclaim, defendant wife alleges that the provisions of the stipulation respecting the payment of "alimony” were made without adequate consideration, were made because she was induced to believe that she was legally obligated to support her husband and that the support provision of the stipulation is "unenforceable and void as a matter of law.” Defendant wife seeks reimbursement of moneys paid to plaintiff husband pursuant to the stipulation.
Defendant wife’s second counterclaim seeks rescission of the stipulation based upon the contention that misrepresentations were made to her by plaintiff husband respecting his ability to work and that those alleged misrepresentations induced her to enter into the stipulation. She also contends that she entered into the stipulation with the belief that it could be modified upon a change in circumstances and that the Appellate Division decision in the divorce action precluded such modification and thereby varied the terms and frustrated the purposes of the stipulation. These contentions will be discussed seriatim.
C. THE VALIDITY OF THE STIPULATION
Defendant wife argues that a stipulation providing for the payment of alimony to a husband is "unenforceable and void as a matter of law” because the court has no power to order a wife to pay alimony to her husband. She relies primarily upon Steinberg v Steinberg (supra) for this proposition.
In Steinberg, the Appellate Division reversed an order which referred a husband’s motion for temporary alimony and counsel fees to the trial court and denied the motion in its entirety. The Appellate Division held that the Supreme Court had no authority to grant the husband’s motion. It reasoned *581 that inasmuch as the courts "may not fashion remedies not provided by statute” in matrimonial matters (46 AD2d 684, citing Walter v Walter, 217 NY 439, 441-442) and because section 236 of the Domestic Relations Law contains no provision empowering the court to direct the wife to provide for the support of the husband, the husband could not prevail on his motion for temporary alimony and counsel fees. (Steinberg, supra, pp 684-685.)
Now that the court has discussed what Steinberg holds, it must discuss what it does not hold, particularly as it relates to the issue before the court. Neither Steinberg nor any other case brought to the court’s attention holds that a payment of alimony or support by a wife so offends public policy so as to render invalid an otherwise enforceable stipulation between the parties to a matrimonial action.
While it is against public policy for a husband and wife to enter into an agreement whereby one relieves the other of the mutual obligation to support each other (General Obligations Law, § 5-311), it is not against public policy for a party not legally liable to pay alimony to agree to do so, particularly when that agreement is part of a settlement of a matrimonial dispute (cf. Vranick v Vranick, 41 AD2d 663; Josephs v Josephs, 78 Misc 2d 723, 726).
A contract is void as against public policy only where it is "quite clearly repugnant to the public conscience” (Kloberg v Teller, 103 Misc 641, 643) or "such as to injuriously affect, or subvert, the public interests” (Kirschenbaum v General Outdoor Adv. Co., 258 NY 489, 494) or violative of a statute (10 NY Jur, Contracts, § 136). The enforcement of this stipulation is neither repugnant, subversive, nor violative of any statute.
No cases directly in point have been found. However, there is a series of cases which deal with stipulations of settlement which provided for the payment of alimony by a party not legally obligated to pay, which are instructive if not determinative of the legal issue before the court. These are Vranick v Vranick (supra), Winsman v Winsman (46 AD2d 820) and Josephs v Josephs (supra).
In Vranick (supra) the wife sued the husband for divorce and the husband counterclaimed for the same relief, based upon the wife’s alleged cruel and inhuman treatment. During the course of the proceedings, the parties reached an agreement whereby the husband agreed to pay alimony to the wife for a period of three years, in exchange for which the wife *582 agreed to withdraw her complaint and to reply to her husband’s counterclaim. The court granted the husband a divorce based upon the wife’s cruel and inhuman treatment and rendered a judgment which incorporated the provisions of the agreement. The wife later moved for a modification of the judgment and Special Term granted the motion.
The Appellate Division reversed the modification, because the alimony provision in the judgment was based upon a stipulation which could not be modified. However, the court noted that even though the trial court was without power to award the wife alimony under the circumstances (Domestic Relations Law, § 236) the stipulation constituted a valid and enforceable agreement.
"Since judgment was granted to defendant [husband] based upon plaintiff’s [wife’s] misconduct, the trial court itself lacked the power to award alimony to plaintiff (Domestic Relations Law, § 236; Math v. Math, 39 A D 2d 583, affd. 31 N Y 2d 693) * * * It is our opinion that as between the parties the stipulation constituted a valid enforceable contract to pay a certain sum * * * as alimony. While plaintiff could properly sue to enforce the agreement, it was error to grant her motion to modify it.” (Vranick v Vranick, supra, p 663.)
Thus, in Vranick, the fact that the Domestic Relations Law prohibited the payment of alimony to a wife guilty of misconduct (see Siegel, Practice Commentary to section 236 of the Domestic Relations Law, McKinney’s Cons Laws of NY, Book 14 [1964]) did not lead to a finding that a stipulation which provided for such payments was unenforceable. Rather, the court viewed the stipulation in the same manner in which any stipulation is viewed, stating, "The court does not have the power to modify or alter a stipulation in any material detail without the assent of both parties, absent fraud or overreaching”. (Vranick v Vranick, supra.)
Similarly, in Winsman v Winsman (supra) the Appellate Division refused to allow a husband who stipulated to pay his wife alimony in exchange for her allowing him to obtain an uncontested divorce based upon cruel and inhuman treatment to avoid that stipulation by claiming that section 236 of the Domestic Relations Law prohibited the court from awarding alimony to a wife guilty of misconduct. The trial court had upheld the wife’s contention "that a valid agreement had been made which rendered section 236 of the Domestic Relations Law inapplicable” (46 AD2d 820). The Appellate Division *583 affirmed and held that the husband’s stipulation constituted a waiver of the proscription of section 236 upon which waiver the lower court and the wife relied.
"The defendant [wife], as did the court, relied upon that representation and waiver and the plaintiff should not now be relieved of an obligation he had assumed by waiver in exchange for an uncontested divorce * * * Were we to hold otherwise, we would provoke the trial of countless contested matrimonial actions when such trial was neither necessary nor desirable.” (Winsman v Winsman, supra, p 820; emphasis supplied.)
Josephs v Josephs (supra) also involved a stipulation providing for the payment of alimony to a wife adjudged guilty of misconduct sufficient to prevent her from receiving alimony. The stipulation was read into the record in open court and was arrived at "upon the suggestion of the court” (78 Misc 2d, at pp 724-725). The alimony provisions were incorporated in the judgment. After approximately one year, the husband brought on a motion to modify the judgment to reduce the alimony payments. Mr. Justice Heller denied the motion and held that "[t]he stipulation, clear and unambiguous, entered into in open court, dictated by plaintiffs own counsel in the presence of the parties and their attorneys, is binding like any other valid and subsisting contract and cannot be set aside absent fraud or overreaching” (78 Mise 2d, at pp 726-727; citations omitted, emphasis supplied).
With respect to the question of whether the stipulation was enforceable, despite the proscription of section 236 of the Domestic Relations Law the court stated (p 726):
"Concededly, at the time of the divorce plaintiff was under no legal obligation or duty to pay alimony to the defendant and as a matter of law, the court was prohibited from making any award * * * However, plaintiff nonetheless agreed to make support payments to the defendant, the reason therefor being immaterial. * * *
"While it is true that the plaintiff could not have been compelled to pay alimony, the indisputable fact is that he voluntarily * * * agreed to do so, thereby, for all intents and purposes, waiving the benefit of the statute.”
In the instant action, the defendant wife entered into a stipulation to make payments to support her husband in return for which she obtained, inter alia, an uncontested divorce. The stipulation was arrived at after "serious negotia *584 tions” (as in Winsman) and with the help of the court (as in Josephs). It was read into the record by plaintiff wife’s own counsel, relied upon by both the court and the defendant husband and incorporated in a judgment prepared by wife’s own counsel. As was the case in Josephs (supra) both defendant and her husband testified that they understood and agreed to the stipulation’s terms. Thus, the court holds that the stipulation entered into between the parties is not void or against public policy and may not be modified or set aside absent proof showing fraud or overreaching (Elyachar v Elyachar, 43 AD2d 832, 833; Vranick v Vranick, supra; Josephs v Josephs, supra). The "terms have been written by the parties — the court may not rewrite them” (Rosenberg v Rosenberg, 46 Misc 2d 693, 697).
This holding, like the holdings in Vranick, Winsman and Josephs (supra) is consistent with the policy enunciated in Goldman v Goldman (282 NY 296). That policy is that the parties to a marriage are free to agree to assume obligations other than those which the law includes as a part of the marital relationship and that the court’s power to define those obligations which arise solely from the marriage relation does not affect the parties’ ability to make such agreements. Chief Judge Lehman, writing for the court, stated (pp 299-300): "Though the marriage relation is created by arrangement or contract of the parties, the State, and not the parties determines the scope of the obligations arising from the marriage relation. * * * As part of the separation agreement, or of other agreement sanctioned by law, they may stipulate that either party shall assume obligations supplementing the obligations arising from the marital relation. Such agreements, lawful when made, will be enforced like other agreements unless impeached or challenged for some cause recognized by law.”
The Court of Appeals also reaffirmed another principle which must strongly influence the disposition of this matter: the principle that stipulations of settlement should not be set aside unless the record reveals that its execution was procured by fraud or duress (see Galusha v Galusha, 116 NY 635, 646). Where, as here, that stipulation is entered into in open court by parties who are represented by counsel and give testimony affirming their understanding of its terms, it cannot be set aside without a clear and convincing showing of fraud or duress (Wilson v Wilson, 44 AD2d 667; Josephs v Josephs, *585 supra) or upon grounds sufficient to invalidate a contract (Bond v Bond, 260 App Div 781, 782; Schlanger v Schlanger, 129 NYS2d 760, 763).
The court finds that defendant wife has failed to meet this burden of proving that the stipulation is invalid because of fraud, misrepresentation or mistake.
D. THE "MISREPRESENTATION” DEFENSE
Defendant wife’s second affirmative defense and counterclaim seeks rescission of the stipulation because it was allegedly procured by certain misrepresentations made by the plaintiff husband respecting "his ability to work, his health and his residence”. In her verified bill of particulars, the defendant wife stated that "The Plaintiffs attorney represented to the Defendant and her attorneys that Plaintiff on February 14, 1974 was permanently disabled from working, when this was not and is not now the fact.”
During her examination before trial, portions of which were placed into the record during the trial, defendant wife admitted that she did not speak with plaintiff husband or his attorney. When asked when, where and how such misrepresentations were made defendant wife stated, "Well, I can only say to you I can’t answer that because I don’t know if they [plaintiffs attorney] did or if they didn’t [make any oral representations].”
The testimony of defendant wife’s attorney, reveals that, even if any representations were made, they were true, and moreover, no one relied upon them. He testified that the allegations in the plaintiff husband’s counterclaim in the divorce action relating to his inability to work were verified by an independent investigation and that he [the attorney] personally concluded that the husband might become a public charge if he was divorced.
Thus, the second affirmative defense and counterclaim for rescission based upon misrepresentation must be dismissed for failure of proof that: (1) any such misrepresentations were made; (2) such statements, if made, were false; and (3) if made and false, such statements were relied on by defendant wife (see Channel Master Corp. v Aluminum Ltd. Sales, 4 NY2d 403, 407).
Moreover, it should be noted that another impediment to the granting of rescission on this ground exists. It is a well-settled principle of law that a stipulation cannot be set aside *586 where the parties cannot be returned to the status quo (Barry v Mutual Life Ins. Co. of N. Y., 53 NY 536, 540; Bond v Bond, 260 App Div 781, 782, supra). In the instant case, returning the parties to the status quo would involve reinstating plaintiff husband’s answer and counterclaim in the divorce action (see Bond, supra, p 783); returning the payments made to the husband for his share of the marital abode and the stock in the Rockville Links Corp. and, in effect "remarrying” the parties. This would be manifestly absurd. Accordingly, these parties cannot be returned to the status quo and rescission of the stipulation would be most inappropriate.
E. THE "MISTAKE OF LAW” DEFENSE
Defendant wife’s first affirmative defense and counterclaim alleges that she entered into the stipulation "only because she was induced to believe there was a duty imposed upon her by law to support her husband, and that, the court would order said support, after trial of the action.” The court finds that the defendant wife has failed to prove this allegation.
The specifics of this allegation, which are contained in defendant wife’s verified bill of particulars, are as follows: "The defendant was advised by her attorneys and by the Court that the Court had the power to award alimony.” However, defendant wife’s testimony regarding her conversations with the court and with her attorneys, and testimony of one of her attorneys regarding the proceedings reveal that such advice was never imparted to her or that such advice, if given, did not prompt her to settle the divorce action.
As to defendant wife’s allegations that the court advised her that it had the power to order her to pay the plaintiff husband alimony, the record is devoid of even the slightest suggestion that such advice was imparted to her. Defendant wife’s testimony, admitted solely for the purpose of showing her state of mind, was that she was brought into the Trial Judge’s chambers at approximately 4:30 p.m. on the day of the trial, whereupon he stated, "We cannot afford to have this man become a public charge * * * Would you agree to pay him $125 a week?” Defendant wife testified that she then agreed and then "got on the witness stand, and * * * agreed to the stipulation.”
The court finds that the defendant wife’s characterization of the foregoing as advice from the court that it had the power *587 to award plaintiff husband alimony is either mistaken or incorrect.
The record is similarly barren respecting any such advice having been given defendant wife by her own attorney. Defendant wife testified during her examination before trial that there was "never a discussion” between her and her attorneys respecting alimony prior to the trial. According to defendant wife, during the conferences which occurred on the day of the trial, her attorney told her that she "probably would have to pay some money to Mr. Cheatham” as part of a settlement. Defendant wife also testified that her attorney never advised her that the court had the power to award her plaintiff husband alimony. She stated that the attorney asked her if she agreed to making the payment after she spoke to the Trial Judge.
In Schlanger v Schlanger (supra) a defendant sought to avoid compliance with a stipulation of settlement entered into the record in open court on grounds quite similar to defendant wife’s "mistake of law” defense. He claimed that he made his offer of settlement under the mistaken belief that he would face criminal prosecution and due to "irresistible pressure” to settle exerted upon him by his attorneys and the court (129 NYS2d, at p 764). He claimed that the court "impressed upon him” that his case was one which he "could not afford to have tried” (id.). Justice Scileppi, in denying defendant’s motion to set aside the stipulation, called defendant’s claim that the court exerted undue influence "a gross distortion” and stated that "the grounds urged as the basis for being relieved from [the settlement] are nebulous and do not constitute a sufficient basis for rescission.” (129 NYS2d, at p 766.)
Similarly, in Bond v Bond (supra) the defendant husband sought to be relieved of a stipulation of settlement dictated into the record in open court on the ground that he was "awed by the presence of the justice and others present” (260 App Div, at p 782). The trial court granted defendant’s motion and the Appellate Division reversed stating: "The nebulous grounds advanced by the defendant in his moving affidavit do not constitute sufficient basis for rescission” (260 App Div, at p 782).
The grounds advanced by defendant wife are, in the opinion of the court, as nebulous as those presented in Schlanger and Bond (supra). The court finds that if the defendant wife settled the divorce action because she believed that the court would *588 order her to pay alimony to plaintiff husband, that belief sprung full blown from her own mind, and not from anything she was told by the court or her attorneys.
The court is constrained to note that the evidence adduced at trial reveals the real reason why the divorce action was settled. Defendant wife testified that: "I agreed to do this [pay plaintiff] because I just wanted to be free, for no other reason. I wanted to get this thing off my back, and if it was going to cost me $125 a week, and if it was legal for me to pay alimony, I was perfectly willing to do so.”
Defendant wife achieved her goal by entering into an enforceable agreement to pay her husband $125 per week. The fact that her attorney called those payments "alimony, if you will” when he dictated the stipulation into the record is not controlling. Moreover, her goal was achieved without the necessity of a trial on the merits and through the withdrawal of plaintiff husband’s counterclaim. This allowed her to avoid testifying about what she has characterized as "delicate” issues raised in her claim and plaintiff husband’s counterclaim.
Assuming arguendo that defendant wife entered into the stipulation because she believed the court could order her to pay the plaintiff husband’s support and maintenance, her unilateral mistake is not grounds for rescission absent a showing of fraud or some other equitable consideration (Albany Discount Corp. v Basile, 32 AD2d 723, 724).
Furthermore, to allow the defendant wife to avoid the obligation of the stipulation would be contrary to public policy and "would place a premium on her negligence” in failing to consult her counsel as to her obligation to support her husband (Pluchino v Pluchino, 1 AD2d 831). There is a rule of diligence imposed upon one who seeks relief by rescission, which requires the wife to prove that she acted diligently "in order that the court may determine whether [a] reasonable effort was made” by her to ascertain her rights. (Hinrichs v City Bank Farmers Trust Co., 47 NYS2d 75, 81.) The defendant wife’s testimony that she realized the illegality of paying "alimony” to her husband following a subsequent conversation with the wife of an attorney is not only irrelevant to her execution of a voluntary stipulation to pay support to the plaintiff husband, but also demonstrates that "by the exercise of ordinary diligence” she could have been apprised of her *589 rights in entering into such a stipulation merely by consulting her counsel. (See Hardt v Heidweyer, 152 US 547, 559).
Accordingly, plaintiff husband is awarded judgment in the amount of $11,000, plus interest.